IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LONZO LEWIS, III, | CIVIL NO. 12-00453 DKW-RLP |
| Plaintiff, | ORDER GRANTING DEFENDANT AMERON INTERNATIONAL |
| vs. | CORPORATION'S MOTION FOR SUMMARY JUDGMENT |
| AMERON INTERNATIONAL and ALIKA MANCINI, | |
| Defendants. | |

**ORDER GRANTING DEFENDANT AMERON INTERNATIONAL
CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Lonzo Lewis III alleges discrimination and hostile work

environment, principally caused by racial remarks made by co-workers in 2008, and

retaliation by his employer Ameron, when he was terminated in 2011 after

complaining about those remarks. Because Lewis has failed to establish a prima

facie claim of discrimination, hostile work environment, or retaliation, and because

Ameron terminated Lewis following an independent investigation that evidenced

Lewis' repeated harassment of a co-worker, Ameron is entitled to summary

judgment on each of Lewis' claims.

# BACKGROUND

Defendant Ameron International ("Ameron") hired Lewis as a welder in 2000 and promoted him to a Foreman position in 2008. Lewis Decl. ¶ 2. There is no dispute that, as with all Ameron employees, Lewis received Ameron's policy prohibiting workplace harassment ("Harassment Policy"), as well as its Workplace Violence Policy, through postings on employee bulletin boards. Sato Decl. ¶¶ 3-4, Ex. D; Mori-Mishina Decl. ¶ 4; Ex. E. These policies prohibit, among other things, harassment and retaliation based on race, and set forth internal procedures to guide employees who wish to complain of prohibited conduct. Exs. D & E.

In 2008, Lewis complained to management that co-worker Bernard Kelii directed derogatory racial slurs, including "monkey ass," at him and threatened that his "days [were] numbered." According to Ameron, Kelii never threatened Lewis directly, but instead made these statements to co-workers outside of Lewis' presence. West Decl. ¶ 6, Ex. A at 47-56. Nonetheless, Ameron hired a third-party investigator to evaluate Lewis' complaint, and on September 10, 2008, Ameron terminated Kelii for violating Ameron's Workplace Violence Policy and Harassment Policy, as well as Ameron's House Rules. West Decl. ¶ 8, Ex. A at 60; Lewis Decl. ¶¶ 4-5.

According to Ameron, not long after Kelii was terminated, it received a complaint from another employee that Lewis had been harassing and threatening employees working under him and giving them unfair work assignments. Mori-Mishina Decl. ¶ 5. Ameron again hired a third-party investigator, but Ameron took no disciplinary action against Lewis because of the investigator's inability to substantiate the complaint. Mori-Mishina Decl. ¶ 5; Ex. A at 76; Ex. H.

In August 2008, Lewis complained to his supervisor, shop superintendent, Alika Mancini, about being called a "monkey" and "monkey ass" by daytime foreman Edwin Yamamoto, a friend of Kelii. According to Lewis, he complained to Mancini about Yamamoto's continued racial remarks as late as August 2010, but no action was ever taken. Lewis Decl. ¶¶ 7, 10. Lewis also complained to Mancini that someone urinated in his hard hat, and someone wrote "NIG" on his truck and "nigger" on the wall of Ameron's bathroom. Lewis Decl. ¶ 7. Throughout his employment, Lewis was the only African-American employed at Ameron. Lewis Decl. ¶ 3.

In 2008, Brian Marumoto filed a complaint with management against Lewis, as well as a stress-related worker's compensation claim. Lewis Decl. ¶ 8. Lewis testified at the worker's compensation hearing on behalf of Ameron about his interactions as Marumoto's supervisor. According to Lewis, Marumoto's worker's

compensation claim was denied, and Marumoto held a grudge against him.   Lewis Decl. ¶ 9.   In September 2010, Marumoto cut off part of his finger in an industrial accident while working at Ameron.   Lewis states that he twice asked Marumoto about his finger, and on a third occasion, he and several other workers joked with Marumoto about the severed finger.   Marumoto filed a complaint against Lewis for making harassing comments about his finger.   Lewis Decl. ¶ 12.   On November 1, 2010, Ameron suspended Lewis following Marumoto's complaint, pending a complete investigation.   Lewis Decl. ¶ 14; Ex. 1.

Ameron hired attorney Susan Ichinose, who had previously done work for Ameron, as an independent investigator in the matter.   Ichinose interviewed several Ameron employees and reviewed Ameron's policies and House Rules.   Ex. J at 1-2.   She twice interviewed Lewis with a union representative present.   Ex. A at 80-81; Ex. J at 2.   In her January 5, 2011 report, Ichinose found that Lewis had deliberately harassed Marumoto on three separate occasions.   Ex. J at 18.   The report states that Lewis "engaged in offensive, demeaning, and provocative conduct toward Mr. Marumoto.   He did so in disregard of direct instructions by his superiors to avoid such contact.   He has also lied to the fact-finder in the course of this investigation."   Ex. J at 18.

On January 18, 2011, Ameron terminated Lewis, based on Ichinose's findings. The Union grieved the termination, but an arbitration over the grievance was delayed because of the death of the initial arbitrator. On June 1, 2013, a substitute arbitrator issued a decision in favor of Lewis, substantiating many of Ichinose's factual findings, but determining that Ameron's termination decision was too harsh. Lewis was accordingly reinstated, effective June 1, 2013, with back pay. Lewis Decl. ¶¶ 26-27; Ex. 10.

On March 9, 2011, Lewis completed a Pre-Complaint Questionnaire with the Hawaii Civil Rights Commission ("HCRC"). He indicated in the questionnaire that he had been harassed by Yamamoto and other Ameron employees. Lewis Decl. ¶ 19, Ex. 3. On April 14, 2011, the matter was referred to the EEOC, and on June 16, 2011, Lewis signed a Complaint with the EEOC reporting that he had been discriminated against because of race and in retaliation for opposing discrimination. Lewis Decl. ¶¶ 20-21, Ex. N. Lewis claims that he received a Dismissal and Right to Sue letter from the HCRC on May 15, 2012. Lewis Decl. ¶ 22, Ex. 6. He also claims that on April 12, 2012, the EEOC issued a Dismissal and Notice of Rights letter, but that he did not receive it until August 7, 2012, in an envelope from the EEOC that was postmarked August 6, 2012. Lewis Decl. ¶ 23; Ex. 7. At his deposition, however, Lewis indicated that he received the

EEOC letter in April 2012. Ex. C at 255-56. At the hearing on the motion, Lewis'

counsel represented that Lewis, who was proceeding pro se at the relevant time in

2012, did not receive the letter until August 7, 2012.

Lewis filed the instant case on August 8, 2012, alleging that he was

terminated in retaliation for complaining about harassment, in violation of Title VII

of the Civil Rights Act of 1948 and Hawaii Revised Statutes Chapter 378.

According to Lewis, "[t]his is primarily a case of retaliation against Plaintiff for

reporting racial and discriminatory statement[s] made against him by a co-worker."

Mem. in Opp. at 3. Ameron seeks summary judgment on all claims.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to

summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

### I.    Timeliness of Lewis' Claims

"Title VII provides that upon dismissing a charge of discrimination, the

EEOC must notify the claimant and inform her that she has ninety days to bring a

civil action." *Payan v. Aramark Mgmt. Servs. Ltd.*, 495 F.3d 1119, 1121 (9th Cir.

2007); 42 U.S.C. § 2000e-5(f)(1). "[T]his ninety-day period operates as a

limitations period.   If a litigant does not file suit within ninety days [of] the date EEOC dismisses a claim, then the action is time-barred." *Payan*, 495 F.3d at 1121 (alteration in original) (citations omitted).   The Ninth Circuit "measure[s] the start of the limitations period from the date on which a right-to-sue notice arrived at the claimant's address of record."   *Id*. at 1126.   The mailbox rule is "a long-established principle which presumes that, upon a showing of predicate facts that a communication was sent, the communication reached its destination in regular time."   *Id*. at 1123.   Consequently, "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee."   *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995).

According to Ameron, the EEOC mailed the Right to Sue letter to Lewis and Ameron's counsel on April 12, 2012.   *See* Profit Decl. 3-4 (showing the "Date Mailed" of the dismissal notice as 4/12/12 and EEOC case log showing that on 4/12/12, the EEOC "mail[ed] dismissal to" Charging Party and Respondent); Ex. O.   The deadline to file suit would have been July 14, 2012, or 90 days after April 15, 2012, applying the three-day mailbox rule.   Lewis did not file this lawsuit until August 8, 2012.

When asked at his deposition if he received the EEOC Right to Sue letter "in April of 2012," Lewis responded, "I assume, yes."   Ex. C at 255-56.   In

his Declaration, however, Lewis states that he did not receive the letter until August 7, 2012, in an envelope from EEOC postmarked August 6, 2012. Lewis Decl. ¶ 23; Ex. 7. At oral argument, Lewis' counsel confirmed that Lewis received the letter for the first time on August 7, 2012. Viewing the evidence in the light most favorable to Lewis, the Court finds a question of fact exists regarding when Lewis first received the EEOC Right to Sue Letter, and, therefore, whether his August 8, 2012 complaint was timely. Summary judgment on the basis of timeliness is therefore denied.

## II.   Discrimination and Hostile Work Environment Claims

Title VII makes it illegal for an employer to discharge or otherwise discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Lewis' complaint, filed pro se, does not enumerate separate counts for discrimination or hostile work environment, but sets forth allegations arguably implying such claims. And although Lewis indicates that his case is primarily based on retaliation, Ameron moves for summary judgment on any claims for (1) discrimination, because there is no evidence that Lewis was treated differently on account of his race or national origin, and (2) hostile work environment, on the grounds that such claim was not timely filed with

the administrative agency, and on the merits.   The Court first addresses the claim

for discrimination.

### A.   <u>Discrimination</u>

A person suffers disparate treatment in his or her employment when he

or she is singled out and treated less favorably than similarly situated individuals on

account of "race, color, religion, sex, or national origin."   In order to state a claim,

Lewis must establish that: (1) he belongs to a protected class; (2) he was qualified

for the position; (3) he was subject to an adverse employment action; and (4)

similarly situated individuals outside his protected class were treated more

favorably.   *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th

Cir. 2000).

Lewis' opposition to the motion for summary judgment is silent with

respect to his discrimination claim and makes no attempt to establish a prima facie

case.   Notably, he fails to provide evidence of any similarly situated employees.

"[I]ndividuals are similarly situated when they have similar jobs and display similar

conduct."   *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

Although Lewis need not show that other employees were identical to him, he must

show that they were "similar in material respects," which he has made no attempt to

do.   *Earl v. Nielsen Media Research, Inc*., 658 F.3d 1108, 1114 (9th Cir. 2011).

Nor does he provide any evidence or argument that others were treated more favorably. Ameron, on the other hand, provided evidence that it investigated and terminated other employees for violating its Harassment Policy, House Rules and Work Place Violence Policy, including Kelii, just as it did with Lewis, and did so in the same general time frame as the conduct complained of by Lewis. Accordingly, Lewis has failed to establish, or even attempt to establish, a prima facie case of discrimination, and Ameron is entitled to summary judgment.

**B.    Hostile Work Environment**

Under Title VII, hostile work environment claims must be filed within 300 days of the allegedly hostile conduct. 42 U.S.C. § 2000e-5(e)(1); *EEOC v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172, 1193-94 (D. Haw. 2012). Here, many of the incidents alleged by Lewis as hostile occurred in 2008. For example, Lewis claims someone urinated in his hard hat "before the Bernard Kelii incident," which occurred in August 2008.[1] Ex. B at 136, 173. Lewis also alleges racial slurs were written on his truck in approximately December 2008, but does not know whether that occurred at Ameron or elsewhere. Ex. B at 204-06. Ameron notes that the EEOC received Lewis' complaint on June 21, 2011. *See* Ex. N; *Sanchez v. Pac.*

---

[1]At his deposition, however, Lewis stated that the hard hat incident likely arose because of "jealous" co-workers and that it was *not* racially motivated. Ex. A at 43.

*Powder Co.*, 147 F.3d 1097, 1099 (9th Cir. 1988) (citing 29 C.F.R. § 1626.7)

("Charges are 'filed' when 'received.'").

Ameron argues that Lewis fails to demonstrate that at least one non-discrete act of harassment occurred on or after August 25, 2010 (300 days prior to June 21, 2011). Lewis does not address Ameron's arguments regarding his failure to file these claims with the administrative agency within 180 days (for state law claims) or 300 days (for federal claims) after the last alleged act of harassment occurred, entitling Ameron to summary judgment for this reason alone.

Even if these claims were timely, however, they fail to establish a hostile work environment. To establish a prima facie case of a hostile work environment under Title VII, Lewis must show that: (1) he was subjected to verbal or physical conduct of a discriminatory nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive work environment. *Vasquez v. County of Los Angeles,* 349 F.3d 634, 642 (9th Cir. 2003); *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). In considering whether the discriminatory conduct was "severe or pervasive," the Court looks to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). Where the alleged harasser is a co-worker, rather than a supervisor, a plaintiff must also show that "the employer knew or should have known of the harassment but did not take adequate steps to address it." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). In opposition to the motion, Lewis makes no attempt to support a hostile work environment claim.

Lewis acknowledges that the work environment at the Ameron quarry commonly included crude and offensive language, name calling and horseplay -- he acknowledges regularly participating in such conduct himself. Ex. B at 155-67. While certainly demeaning, the isolated racial remarks he complains of were not so severe or pervasive to alter his working conditions. Ameron made sure of that by terminating the first of Lewis' alleged harassers in September 2008. Moreover, the evidence shows that Lewis kept working for Ameron for years with little apparent effect, receiving a promotion to Foreman in same time frame that the alleged harassment occurred. Further, Lewis candidly admits that the writing on his truck may not have occurred in the workplace, and that the hard hat incident was probably not motivated by discrimination. The Court therefore cannot attribute such abuse, even considering the evidence in the light most favorable to Lewis, to discriminatory

or harassing conduct within the Ameron work environment. *See, e.g., Vasquez v. Cnty. of L.A.,* 307 F.3d 884, 893 (9th Cir. 2002) (finding no hostile work environment where employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031, 1036 (9th Cir. 1990) (determining no hostile work environment where employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, and kept illegal personnel files on Latino employees).

Additionally, even if Lewis was able to identify sufficiently severe, discriminatory conduct that occurred at Ameron, "where harassment by a co-worker [as opposed to a supervisor or manager] is alleged, the employer can be held liable only where its own negligence is a cause of the harassment." *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). "Title VII liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct." *Swenson*, 271 F.3d at 1191-92; *see also Vance v. Ball State Univ*., 133 S.Ct. 2434, 2441 (2013) ("[W]e have held that an employer is directly liable for an

employee's unlawful harassment if the employer was negligent with respect to the offensive behavior.").

Here, Lewis provides no evidence of such negligence by Ameron. There is no dispute that Ameron promptly investigated, suspended and terminated Kelii following his inappropriate comments about Lewis. Lewis acknowledges that he never reported Yamamoto's alleged inappropriate comments to human resources (Ex. B. at 191) and, in any event, he further acknowledges that he did not want Ameron to take any action because he wanted to talk to Yamamoto himself to clear the air: "I was gonna talk to [Yamamoto] just to squash it and put it behind us because I didn't want to make any waves . . . I didn't want no grievances and all this kind of stuff, I just wanted to squash it man to man." Ex. C. at 282. There is, in other words, no evidence of any negligence by Ameron having caused Yamamoto's alleged harassment. *Swenson*, 271 F.3d at 1191.

Accordingly, Lewis has failed to establish a prima facie claim of hostile work environment.

## III.  Retaliation Claim

The Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to Lewis' retaliation claims under both Title VII, 42 U.S.C. § 2000e, and Hawaii Revised Statutes

§378-2.   Under the *McDonnell Douglas* burden-shifting framework, a plaintiff

must show that (1) he engaged in a protected activity; (2) the defendant took an

adverse action against him; and (3) there was a causal link between his involvement

in the protected activity and defendant's adverse personnel action.   *Freitag v.

Ayers*, 468 F.3d 528, 541 (9th Cir. 2006).   Once a plaintiff succeeds in presenting a

prima facie case, the burden shifts to the defendant to articulate a "legitimate,

nondiscriminatory reason" for its employment decision.   *Noyes v. Kelly Servs*., 488

F.3d 1163, 1168 (9th Cir. 2007).   "Should the defendant carry its burden, the

burden then shifts back to the plaintiff to raise a triable issue of fact that the

defendant's proffered reason was a pretext for unlawful discrimination."   *Id.*

### A. **Prima Facie Case of Retaliation**

Ameron argues that Lewis fails to satisfy the third prong of a prima

facie case for retaliation—a causal link between his alleged protected activity in

complaining to his supervisors about racial comments made by co-workers, and his

suspension and termination for harassing Marumoto.   Lewis argues that a causal

link exists because his complaints beginning in August 2008 and again in August

2010 relating to Yamamoto's racial remarks are in close proximity to his suspension

on November 1, 2010, and "close enough to establish a causal link between the

two."   Mem. in Opp. at 14.   As discussed below, however, the evidence shows that

those responsible for suspending and terminating Lewis were not aware of any complaints having been made by him in temporal proximity to their decisions. At most, Ameron's decisionmakers were aware only of Lewis' August 2008 complaints, which suggest no causality with their November 2010 and January 2011 employment actions. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Moreover, "it is causation, and not temporal proximity alone, which is an element of a plaintiff's retaliation claim." *Blanchard v. Lahood*, 461 Fed. Appx. 542, 544 (9th Cir. 2011) (citing *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894-95 (9th Cir. 2005)).

Lewis fails to create a question of fact that the decision to terminate him was made because of his complaints about racial remarks. On the contrary, Ameron presented evidence that its decisionmakers, Mori-Mishina and West, were not aware that Lewis made any complaints in August 2010 about racial remarks by Yamamoto. *See* Mori-Mishina Decl. ¶ 15; West Decl. ¶¶ 9, 12; *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (causation element requires evidence that "employer was aware that the plaintiff had engaged in the protected activity"). Although West and Mori-Mishina were aware of the racial remarks made by Kelii in 2008 because of the findings of the investigator's report that led to Kelii's termination, those remarks and Lewis' related complaint were remote in time

relative to Lewis' November 2010 suspension and January 2011 termination for purposes of showing temporal proximity. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (noting that those cases that accept mere temporal proximity as sufficient evidence of causality to establish a prima facie case uniformly hold that temporal proximity must be "very close"); *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2003) (refusing to draw an inference of causation when there was a nine-month period between the employer's knowledge of protected activity and an adverse employment action); *Tatum v. Schwartz*, 405 Fed. Appx. 169, 171 (9th Cir. 2010) ("Temporal proximity of one year--measured from the date of [plaintiff's] complaint until the date of her work assignment--is insufficient to establish an inference of retaliation without additional evidence.").

Temporal proximity is also not the sole measuring stick. Ameron characterizes the complaint by Marumoto and subsequent investigation as an intervening, legitimate reason for terminating Lewis, which interrupts any chain of causation. Reply at 5 (citing *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013) (noting that "an intervening legitimate reason to take an adverse employment action dispels an inference of retaliation based on temporal proximity")). According to Ameron, its decision to terminate Lewis was based on the third party

investigator's finding of Lewis' "deliberate harassment of Mr. Marumoto combined with Mr. Lewis' dishonesty during the investigation." Mori-Mishina Decl. ¶ 11.

The Court agrees. Even if temporal proximity existed between Lewis' harassment complaints and his suspension and termination, Lewis appears not to recognize the significance of the investigator's January 5, 2011 findings made immediately prior to his termination. The sequence of events, if anything, suggests that Ameron acted in response to the investigation, not in response to Lewis' complaints. Were it otherwise, an employee could effectively foreclose adverse action by an employer simply by making a harassment complaint prior to the issuance of an anticipated, unflattering conduct report. That is obviously not the intent of retaliation law, and this Court declines to endorse an approach that suggests otherwise.

### B.  Ameron's Legitimate, Non-Discriminatory Reasons For Terminating Lewis

Even assuming that Lewis could establish a prima facie case of retaliation, Ameron set forth a legitimate, non-retaliatory reason for terminating his employment. If an employer provides a legitimate explanation for the challenged decision, the burden shifts back to the plaintiff to show that the employer's explanation is merely a pretext for impermissible discrimination or retaliation. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The plaintiff needs to do more

than merely deny the credibility of the defendant's proffered reasons. *See Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). To survive summary judgment, the plaintiff must offer either direct or specific and substantial circumstantial evidence of retaliatory motive. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). Lewis fails to do so here.

The evidence shows that when Marumoto complained to Ameron that Lewis harassed him on three occasions, Ameron suspended Lewis and initiated an independent investigation. Mori-Mishina Decl. ¶ 6-7; Ex. I. In her January 2011 report, Ichinose, the independent investigator, found that Lewis deliberately harassed Marumoto and lied regarding those incidents. *See* Ex. J at 18; Ex. K. Ameron thereafter terminated Lewis for violating its House Rules and Workplace Violence policy. Mori-Mishina Decl. ¶¶ 10-11; West Decl. ¶ 11; Ex. K.

In an attempt to establish pretext, Lewis asserts that Ichinose had been a hired investigator for Ameron on many occasions and "earned a significant amount of income working for Ameron." Mem. in Opp. at 15. Even if true, Lewis provides no evidence of bias or any other reason to discount the findings in Ichinose's report. There is no evidence, for instance, of the content of Ichinose's findings from other cases. Nor does Lewis so much as suggest why Ichinose might be biased against him and in favor of a co-employee (Marumoto), neither of whom

she presumably knew. This was not an investigation pitting Lewis against Ameron. Nor does Lewis' unfounded contention call into question the veracity of Ameron's rationale for terminating him or establish that its reasons were pretextual. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002) (noting that it does not matter if the proffered justification for an employment action was "foolish or trivial or even baseless"); *Green v. Maricopa County Cmty. College Sch. Dist.,* 265 F. Supp. 2d 1110, 1128 (D. Ariz. 2003) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered."); *see also Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270 (9th Cir. 1996) (plaintiff's "subjective personal judgments . . . do not raise a genuine issue of material fact").

Lewis also argues that because the arbitrator reinstated him to his previous position, "Ameron's stated reasons for suspending plaintiff are pretextual." Mem. in Opp. at 15-16. Lewis misperceives both the arbitrator's ruling and Ameron's actions. The arbitrator evaluated whether Ameron had "just cause" for Lewis' termination, not whether Ameron's proffered reason was pretextual. Indeed, the arbitrator agreed with the factual findings in Ichinose's report, but found

termination to be too harsh a sanction.   *See* Ex. 10 at 28, 30.[2]   Accordingly, because Lewis has offered no direct or specific and substantial circumstantial evidence of pretext, Ameron is entitled to summary judgment on Lewis' retaliation claim.

## **CONCLUSION**

On the basis of the foregoing, the Court GRANTS Defendant Ameron's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: July 1, 2014, at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Lonzo Lewis, III, v. Ameron International and Alika Mancini*;
Civil No. 12-00453 DKW-RLP; ORDER GRANTING DEFENDANT AMERON INTERNATIONAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT

---

[2]Lewis' additional pretextual claim -- that the facts underlying Marumoto's complaint were not reliable because Marumoto held an historic grudge against him -- fails for the same reason.   Even the arbitrator who reinstated Lewis did not quarrel with the facts on which Marumoto's complaint was based.   *See* Ex. 10 at 16-20, 28.